UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OSARHIEME OBAYAGBONA,**<br><br>Petitioner,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Respondent. | Civ. No. 15-388 (WJM)<br>Crim. No. 11-299 (WJM)<br><br>OPINION |

This matter comes before the Court on *pro se* Petitioner Osarhieme Obayagbona's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The motion is decided without oral argument. Fed. R. Civ. P. 78. For the reasons below, the petition is **DISMISSED WITH PREJUDICE** and the relief requested is **DENIED**.

I.   BACKGROUND

Between August 2009 and July 2010, Petitioner along with several co-conspirators accumulated the personal information of strangers in order to steal their identity and gain access to their bank accounts for the purpose of fraudulently withdrawing money. They started with online "phishing" attacks to gather the identity theft victims' information, such as login credentials and passwords for online bank accounts. Petitioner and his co-conspirators then used that information to access the accounts of the victims, either online or via telephone. The fraud was culminated by Petitioner and the co-conspirators using "runners" (or "soldiers") to impersonate the victims at the bank with the stolen information to make fraudulent withdrawals from the accounts.

While a grand jury returned a twenty-seven count Indictment against Petitioner and his co-conspirators on April 28, 2011, upon the Government's motion, all but three of the conspiracy counts were dismissed against Petitioner. (*See United States v. Obaygbona* ("Crim. Dkt."), 2:11-cr-299, ECF No. 70.) A trial was held commencing on June 18, 2012. The jury found Petitioner guilty on all three counts on June 27, 2012. (Crim. Dkt., ECF No. 80.) The Court

1

subsequently sentenced Petitioner to a total of 70 months imprisonment on each of Counts 1 and 2 and 30 months on Count 3. (Crim. Dkt., ECF No. 96.) Post-trial, Petitioner appealed, challenging this Court's instructions to the jury, the Government's argument at summation, and the calculation of his sentencing range under the Guidelines. The Third Circuit affirmed Petitioner's conviction and sentence on February 27, 2014. *See United States v. Obaygbona*, 556 F. App'x 161 (3d Cir. 2014). Petitioner now brings the instant motion to vacate, set aside, correct, amend, or modify his sentence.

## II. STANDARD

Under 28 U.S.C. § 2255, a federal court may vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). While a court may convene a hearing to assist it with deciding a § 2255 motion, such a hearing is not required where "the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Padilla–Castro*, 426 F. App'x 60, 63 (3d Cir. 2011) (quoting 28 U.S.C. § 2255(b)); *accord United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

## III. DISCUSSION

Petitioner raises seven grounds for relief, which are all based in ineffective assistance of counsel claims.

### A. Ineffective Assistance of Counsel Standard

To demonstrate ineffective assistance of counsel, a petitioner must satisfy the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must show that his attorney's representation was not "within the range of competence demanded of attorneys in criminal cases." *Id.* Second, he must show "prejudice"—that there is a reasonable probability that, but for counsel's error, the result would have been different. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Strickland*, 466 U.S. at 687; *Rainey v. Varner*, 603 F.3d 189, 197 (3d. Cir. 2010). Though the two prongs may be addressed in either order, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

A counsel's conduct is presumed to have sound strategy, and—where the record does not explicitly disclose actual strategy—this can be rebutted only by a showing that no sound strategy could have supported such conduct. *United States v. Martin*, 262 F. App'x 392, 397 (3d Cir. 2008). "[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim." *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Alternatively, as to prejudice, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland* 466 U.S. at 694. The Third Circuit has noted that "it is only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999). The *Strickland* test applies equally to counsel's performance at the trial and appellate level. *See Lusick v. Palakovich*, 270 F. App'x 108, 110 (3d Cir. 2008).

**B.     Ground One – Failure to Suppress Electronic Media**

Petitioner's electronic media—two laptops and one cellular phone—was first seized by the Alpharetta Police Department ("APD"). Detective Jeffrey S. Khan of the APD testified at trial that this seizure was pursuant to a search warrant. (Answer to Compl. ("Ans.") Ex. 3, ECF No. 10-3, at 76:20-77:4.) Petitioner does not put forth any facts to contest the validity of this warrant. The electronic media was later provided to the FBI upon request and the FBI conducted its own search based on two federal search warrants. (Ans. Ex. 11 and 12, ECF No. 10-3.) Petitioner argues that a judicial order or warrant was required prior to the FBI obtaining the electronic media from the APD and that the FBI's subsequent possession of the media for six weeks before pursuing a search warrant was unconstitutional. Trial counsel was thus ineffective for failing to challenge these and appellate counsel failed to raise the issue on appeal.

Trial counsel was not deficient for declining to pursue suppression. Petitioner cites no authority—and the Court has not found any binding precedent—for his contention that a judicial order was required in order for the APD to transfer the electronic media legally in their possession to the FBI, especially since the FBI sought its own search warrants prior to conducting a search of the laptops and phone. *See United States v. Lackner*, 535 F. App'x 175, 180 (3d Cir. 2013) (concluding that search was valid where computer was seized by New Jersey police officers pursuant to a search warrant, turned over to Pennsylvania police officers, and the FBI later conducted a search of the laptop.) Moreover, the Third

3

Circuit had found in 2011 that a delay of up to three months between the seizure of electronic media and the application for a search warrant may not be unreasonable. *United States v. Stabile*, 633 F.3d 219, 236 (3d Cir. 2011). Nevertheless, even if trial counsel was able to show that the delay was unreasonable and that the transfer of evidence from the APD was unconstitutional, he would have had to establish that the FBI failed to act in good faith in order to suppress the electronic media.

The Third Circuit has stated that "suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *Lackner*, 535 F. App'x at 180 (quotations omitted). Consequently, "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate" is not barred, unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Id.* Here, two different magistrate judges in this District issued search warrants, based on affidavits denoting how and when the Government came into possession of the electronic media.[1] Since none of the narrow situations set forth by the Third Circuit for unreasonable reliance were present, it was sound strategy for trial counsel to conclude that the warrant was unlikely to be found invalid and choose not to raise an infeasible argument. *See United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 146 (3d Cir. 2002). Accordingly, because Petitioner is unable to rebut the presumption that his counsel's conduct was part of a sound strategy, the Court finds that trial counsel's decision not to challenge the Government's search of the electronic media was not below an objective standard of reasonableness. Similarly, appellate counsel had the opportunity to appraise the merits of these arguments, as Petitioner states that he asked counsel to raise them on appeal, and considering the above it was not unsound for appellate counsel not to advance them.

## C.   Ground Two – Failure to Suppress Emails

Petitioner's next argument is that his trial counsel was ineffective for failing to suppress certain emails and his appellate counsel was deficient for failing to raise this issue on appeal. Petitioner primarily argues that no proof or evidence was presented that the Government obtained a search warrant for the htownniggas@yahoo.com ("Htown") email address. However, at trial Special

---

[1] Contrary to Petitioner's spurious assertions, the Court finds no evidence on the record that Special Agent Heather Hendershot deliberately or recklessly made falsehoods in her affidavits.

4

Agents Edgar Koby and Philip Frigim testified that these emails were produced by Yahoo! Inc. ("Yahoo") pursuant to a search warrant approved and signed by a federal judge. (Ans. Ex. 2, ECF No. 10-3, at 19:21-20:14; 30:19-31:13.) In addition, a custodian of records from Yahoo established the authenticity and potential admissibility of these emails pre-trial. (*See* Crim. Dkt. Government's Mot. Limine Ex. A, ECF No. 64-1.) Since trial and appellate counsels' attempts to suppress the emails on these grounds would have proven fruitless and Petitioner has not demonstrated prejudice—a reasonable probability that the outcome of the trial or appeal would have resulted differently—the Court finds that he is not entitled to relief on this ineffective assistance claim.

### D.     Ground Three – Failure to Raise Improper Venue

Petitioner argues that his trial and appellate counsel were ineffective when they failed to raise the issue of improper venue. Petitioner argues that since the actions and effects of his criminal conduct took place in Georgia, he should have been indicted there and not in this district. Under 18 U.S.C. § 3237(a) "any offense [] begun in one district and completed in another, or committed in more than one district, may be [] prosecuted in any district in which such offense was begun, continued, or completed." Here, Petitioner was charged with three counts of conspiracy, which were the basis for his subsequent trial. While Petitioner was in Georgia, one of Petitioner's co-conspirators, Karlis Karklins, committed a number of the overt acts that gave rise to the conspiracy in this District, including sending phishing emails to a company headquartered in New Jersey. It was thus well within the grounds of reasonable trial and appellate strategy for Petitioner's counsels not to pursue this meritless argument and Petitioner has failed to establish deficient performance or that he was prejudiced by a failure to raise this argument at trial or on appeal.

### E.     Ground Four – Failure to Raise Variance Issue

Petitioner also argues that his trial and appellate counsel were ineffective for failing to raise the issue of variance at either the close of the Government's case or on appeal. A variance ensues when "the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Castro*, 776 F.2d 1118, 1121 (3d Cir. 1985). "To prevail . . . [the petitioner] must show (1) that there was a variance between the indictment and the proof adduced at trial and (2) that the variance prejudiced some substantial right." *United States v. Scott*, 607 F. App'x 191, 195 (3d Cir. 2015).

5

Petitioner contends that, while only one conspiracy was presented in the Indictment, at trial the Government introduced three different conspiracies that amounted to a fatal variance from the Indictment. *See id.* ("Where a single conspiracy is alleged in the indictment, there is a variance if the evidence at trial proves only the existence of multiple conspiracies.") However, "a finding of a master conspiracy with sub-schemes does not constitute a finding of multiple, unrelated conspiracies and, therefore, would not create an impermissible variance." *United States v. Smith*, 789 F.2d 196, 200 (3d Cir. 1986). The Third Circuit has enunciated three factors to consider when determining whether there is a single or multiple conspiracies: "(1) whether there was a common goal among the conspirators; (2) whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators; and (3) the extent to which the participants overlap in the various dealings." *Scott*, 607 F. App'x at 196.

A number of Petitioner's arguments are directly contradicted by the testimony at trial. The Government adduced at trial evidence demonstrating that the co-conspirator Waya Nwaki worked to obtain login credentials and personal information from Karklins and then used that information with the help of Petitioner to fraudulently withdraw money—a common goal. (Ex. 3 at 142:10-143:9 & 148:22-153:8.) Moreover, Nwaki testified that the personal information collected was sent to Petitioner, regardless of his own sources for information or his argument that he had never met Karklins—overlap in the dealings. (*Id.* at 153:17-155:16.) Similarly, Nwaki and Petitioner supplied personal information to Marvin Hill and it was Hill who provided the soldiers that made the fraudulent withdrawals for Nwaki and Petitioner. (*Id.* at 153:1-8; Ex. 5 at 117:11-128:11.) Petitioner and Nwaki paid Hill for these services and Hill paid the soldiers in turn. (*Id.*) Thus, what Petitioner argues as three different conspiracies, the Court finds is in fact a single conspiracy with various cogs that led to a result that would not have come to bear without such continuous cooperation—the second prong.

In light of this, it was well within the range of "reasonable professional assistance" for trial and appellate counsel to not advance this argument and Petitioner has not overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.

**F.    Ground Five – BB&T Restitution**

As to solely his appellate counsel, Petitioner argues that the failure to challenge the restitution provided to BB&T by this Court at the appellate level amounts to ineffective assistance. In response, the Government points to case law holding that § 2255 may not be used to attack only the restitution portion of a sentence. *See Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998) (cited with approval in *Trader v. United States*, 281 F. App'x 87, 88 (3d Cir. 2008)). With this avenue unavailable, Petitioner changes his argument in his reply brief to contend that this restitution amount, which was allegedly not proven at either trial or sentencing, resulted in an increased sentence. Contrary to Petitioner's assertion, appellate counsel raised an identical argument on appeal. The Third Circuit found that the "District Court had before it evidence showing the identity theft conspiracy caused actual or intended losses in excess of $120,874" and that, "[h]aving provided fake identities to his co-conspirators for the purpose that they use them to make unauthorized bank withdrawals, however, Obaygbona cannot disclaim responsibility when his collaborators used the same tactics at other banks." *Obaygbona*, 556 F. App'x at 164. As such, Petitioner's argument is prohibited, as "[s]ection 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal." *United States v. DeRawal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (quotation omitted). Accordingly, since the crux of his argument is barred, Petitioner's claim must fail.

### G. Ground Six – Failure to Appeal 404(b) Ruling

Petitioner argues that appellate counsel's performance was constitutionally deficient when he failed to raise a claim on appeal regarding this Court's ruling on the evidence admitted under Rule 404(b) of the Federal Rules of Evidence—Petitioner's Htown emails (obtained from Yahoo and allegedly his electronic media) and his December 2010 arrest. Petitioner states in his papers that he communicated these arguments to his appellate counsel, who then chose not to include them in the appeal.

The Court will set aside Petitioner's continued arguments regarding how the Government obtained the evidence—the search warrant and authentication—since these have been tackled under Grounds 1 and 2. To be admissible under Rule 404(b), evidence must be "(1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if

7

requested." *United States v. Caldwell*, 760 F.3d 267, 278-79 (3d Cir. 2014). On appeal, counsel would have had to demonstrate that this Court's ruling resulted in an abuse of discretion. *Id.* at 274. From his papers, the Court discerns that Petitioner is contesting the first and third factors as to the Htown emails and the second factor for the December 2010 arrest.

First, Petitioner's argument that the emails were used to impermissibly identify him is undermined by the text of Rule 404(b), which permits the admission of evidence for limited purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Subsequently, the Court provided an appropriate limiting instruction when the evidence was introduced. (*See* Ex. 3 at 7:15-8:15). Further, Petitioner's assertion that any limiting instruction was insufficient due to the prejudicial nature of the emails—specifically, the possibility to confuse the jury—are mere conclusory statements that hinge on the Government's alleged use of these emails for the above improper purpose. Second, Petitioner unpersuasively argues that the December 2010 arrest was unrelated and irrelevant, since it occurred after the charged conduct. As the Government noted in its Rule 404(b) motion, the Third Circuit has held that post-offense 404(b) evidence may be properly admitted to prove, for example, intent. *See United States v. Singleton*, 458 F. App'x 169, 173 (3d Cir. 2012). In addition, as the Government put forth in its letter brief, the December 2010 arrest was in connection with an identity theft/bank fraud scheme bearing resemblance to the charged conduct. (*See* Crim. Dkt. Government's Mot. Limine, ECF No. 62, at 5-6.) Petitioner fails to present any factual support or case law to rebut this. Again, the Court provided a limiting instruction to the jury prior to the introduction of this evidence. (*See* Ex. 3 at 60:14-61:2.)

Consequently, counsel's decision to not take up these arguments on appeal appears to the Court to be the result of sound strategy—in light of their unavailing nature—and Petitioner has not demonstrated that there is a reasonable probability that they would have changed the outcome of his appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue).

## H.   Ground Seven – Failure to Raise Petitioner's Absence

Lastly, Petitioner claims that appellate counsel was ineffective when he failed to raise the issue that Petitioner was not present when the Court considered the jury communication during deliberations. First, contrary to the Government's

passing argument, the transcript shows that Petitioner was not present. (*See* Crim. Dkt. July 27, 2012 Tr., ECF No. 108, at 2:8.) However, it appears from the transcript that Petitioner's counsel was present and consulted by the Court, and that the attorneys had conferred in advance and prepared a joint response to the jury. (*See id.* at 2:19-22.) The questions were themselves noncontroversial and fact-based and the answers provided were reflected in the already put forth testimony. (*See id.* at 2:23-3:12.) The Third Circuit has previously found that any error resulting from similar facts is "harmless" and that a defendant is "not prejudiced by his absence from this stage of the proceedings." *United States v. Velez*, 427 F. App'x 121, 124 (3d Cir. 2011) (finding harmless any error by the district court where defendant was not present when answering jury query, but counsel was present, participated fully, and consented to the court's responses, and where jury asked a factual question regarding testimony.) Based on such case law, it was reasonable strategy for appellate counsel to not raise an unviable issue and, since this would not have altered the outcome of the appeal, Petitioner has not established prejudice resulting from such a choice.

### I.     Certificate of Appealability

No certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(1)(B), and no hearing is required because "the files and records of the case conclusively show that the prisoner is entitled to no relief," *see Padilla–Castro*, 426 F. App'x at 63.

### IV.    CONCLUSION

For the reasons set forth above, Petitioner's 28 U.S.C. § 2255 motion is **DENIED** and **DISMISSED WITH PREJUDICE**. An appropriate order follows.


                                      /s/ William J. Martini
                              **WILLIAM J. MARTINI, U.S.D.J.**


**Date:  September 19, 2016**

9